### SAMUEL BARBER v. LEADER SEWING MACHINE CO. ET AL.

MAY BE SETOFF AGAINST NOTE GIVEN TO STOCKHOLDER.

The solvent stockholders of a failing corporation, by agreement among themselves, made several loans to the company to enable it to continue its business, taking the notes of the corporation for the money so loaned. The company afterwards failed and made an assignment to an assignee for the benefit of the creditors. After the assignment, and long after the note became due, O., one of the stockholders, transferred the note received by him, in payment of an indebtedness due from him to B. Held, that such transfer of the note by O. was subject to any assessment thereafter made against O. in a suit to enforce the individual liability of the stockholder.

Error to the Court of Common Pleas of Cuyahoga county.

HALE, J.

This was an action brought by Barber to enforce the statutory liability of the stockholders in which all the stockholders and creditors within the jurisdiction

of the court are made defendants. There are cross-petitions by several creditors asking the same relief which the plaintiff seeks.

The action was referred to a master to take the testimony and report his findings of the facts and conclusions of law separately. The report of the master is satisfactory in all respects save one, and that relates to the claim of the plaintiff.

The plaintiff is the owner of a promissory note which the corporation gave to J. H. Osborn, a stockholder, and which was by Osborn transferred to Barber after the assignment. The facts essential to the understanding of the point to be decided are as follows:

On the 1st day of October, 1884, the following named persons, stockholders of the corporation, advanced and loaned to the Leader Sewing Machine Co. the amounts set opposite their respective names, to-wit:

| | |
|---|---|
| E. W. John, | $2,000 |
| C. A. Grasselli, | 2,000 |
| Norman Kelly, | 1,000 |
| M. R. Tewksbury, | 2,000 |
| W. M. Hall, | 700 |
| T. J. Overturf, | 800 |
| J. H. Osborn, | 2,144 |

These stockholders were also all the creditors of the corporation at the time of the assignment, except one. At the time these advancements were made the corporation was embarrassed, and this money was furnished by the stockholders to enable it to continue its business.

It plainly appears from the testimony that these several stockholders did not make these advancements to the Leader Sewing Machine Co. because they were seeking an investment for funds they had to loan, but in pursuance of an agreement between themselves that these loans should be made in aid of the enterprise in which they were all mutually interested as stockholders. The loans were in proportion to the stock owned by each, and were intended to equalize the burdens of keeping the corporation afloat, among the solvent stockholders The note now held by the plaintiff is the one given by the corporation to Osborn for the money advanced by him. The transfer of the note by Osborn to Barber was made long after it became due.

On the 1st day of August, 1885, the corporation made an assignment for the benefit of its creditors. At the time of the assignment Osborn was the owner of 250 shares of the capital stock of the corporation. Some time prior to the assignment Osborn became indebted to Barber in the sum of $1,800. After the corporation became insolvent, and after the assignment, Osborn transferred the note given to him for the loan made to the corporation, as stated above, in payment of his indebtedness to Barber in part. In addition, however, to the surrender of his indebtedness, Barber made a small payment in cash to Osborn. Osborn is insolvent, and was so at the time of the assignment, and also at the time of the transfer of the note to Barber.

It thus plainly appears that at the time of the assignment Osborn was liable, as a stockholder in the corporation, to contribute to the fund to be created for the purpose of paying the debts of the corporation, and was also entitled, as creditor of the corporation, to a share in the fund thus created. Both, the right and the liability, attached prior to the assignment and transfer of the note. The question is whether the transfer of the claim to Barber by Osborn, under the circumstances above noted, was subject to assessments that should be made against Osborn as a stockholder of the corporation in a suit to enforce the individual liability of the stockholders. We hold that it was.

This precise question has not been decided by the supreme court of this state, so far as we are able to find; but a similar question, under the National Bank Act, has been recently determined by that court: King v. Armstrong, 50 O. S., 222.

There is a marked similarity in the facts of the two cases. We are aware, however, that the federal and Ohio statutes are not the same; that under the federal statute the liability of the stockholder becomes assets in the hands of the receiver, to be collected and by him applied as other assets of the bank; while under the statute of this state such liability can only be enforced at the suit of the creditor. Still, the reasoning of the court, so far as it rests on principles of equity, sustains the position we take. A stockholder upon whom rests the responsibility of the

debts of a corporation, and whose liability has become fixed, should not be permitted to saddle upon the other stockholders the burden of the debt due him from the corporation, and go wholly free himself, because of his inability to respond to an equitable assessment. If Barber can enforce this claim against the other stockholders, and Osborn escape the payment of the assessment made upon him, the burden which Osborn agreed with his associates to assume is shifted from him to them. Such a result would be manifestly inequitable and unjust, and we know of no principle of law which requires the enforcement of so hard a rule. Osborn should not be permitted to compel the payment of his debt to Barber by his co-stockholders; yet if this note is to be paid in full to Barber, and no assessment collected of Osborn, that is the precise result.

We therefore hold that the transfer of this claim after the insolvency of the corporation, and after its affairs had gone into the hands of an assignee, was subject to an assessment thereafter made against Osborn, in a suit to enforce the individual liability of the stockholders. The report of the referee will be modified as herein indicated, and as so modified, approved.

Decree accordingly.

D. W. Gage, for plaintiff.

J. E. Ingersoll, for creditors.

---

### MECHANIC'S LIENS.

415

[Franklin Circuit Court, September Term, 1893.]

Stewart, Shauck and Shearer, JJ.

†WATKINS, PEASE & CO. v. SHAW.

1. **WHAT SUB CONTRACTOR'S PETITION MUST SHOW.**

In an action by a sub-contractor to enforce the lien given him by sec. 3202, Rev. Stat., his petition must show that the labor and materials were furnished as provided in sec. 3193, that his claim was filed as required by the same section, and if he claims a preference, as required by sec. 3195; that his claim was not disputed, or if disputed was settled by arbitration, and that subsequent to so filing his claim a payment fell due from the owner to the head contractor, and that the owner did not pay his claim when the payment fell due or within ten days thereafter, and that subsequent to said ten days he took the steps to obtain the lien provided for in the first-named section.

2. **AMOUNT DUE ON ORIGINAL CONTRACT NEED NOT BE SHOWN.**

It is not necessary that his petition should show the amount due under the original contract at the time his claim was payable, that being especially within the defendant's knowledge.

On Appeal.

This is an action to enforce a sub-contractor's lien, and the cause of action is stated in the petition as follows:

"On the 10th day of September, 1890, plaintiffs began to furnish work and materials, to wit, building materials, under a contract between the plaintiffs, as sub-contractors, and S., which work and materials were provided for in a contract between said S. and the defendant Shaw, as owner, for the construction of a building on premises then and still owned by said Shaw, described as follows, viz: Situate, etc.

Plaintiff completed the furnishing of said work and materials on November 26, 1890, and on the same day payment therefor became due but the same was not paid, whereby $262.26 was then owing to plaintiffs thereon. On December 1, 1890, plaintiffs filed with one C., the duly authorized agent in the premises of the defendant Shaw, a sworn and itemized account of the amount and value of said labor and materials, together with a sworn statement that there were no credits or set-offs thereto, and that no promissory note had been given therefor, and on the same day plaintiffs also filed a copy of said account with the recorder of Franklin county. Said account was not disputed by said S. within ten days after the presentation thereof, to said C. as such agent. Thereafter, and after the next succeeding payments became due from said defendant to said S., said defendant and his agent neglected and refused to pay said demand of plaintiffs, or any part thereof. And thereupon, on March 23, 1891, plaintiffs duly filed with the recorder of said county an affidavit, pursuant to the statute, containing an itemized account of the amount and value of such labor and materials with all

---

† Cited in Owen & Co. v. Murry, 6 Ohio Dec., 223, 225.